[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11282
_____

D.C. Docket No. 5:16-cr-00044-JDW-PRL-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEPHEN COMETA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 3, 2020)

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM and LUCK, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the district court abused its

discretion by not holding additional competency hearings before the trial and the

sentencing of Stephen Cometa after it previously had his competency evaluated

and found him competent. We affirm Cometa's conviction and sentence because the expert opinion that Cometa was competent and his evident and continued understanding of the proceedings and ability to consult with his counsel and assist his defense establish that no bona fide doubt about his competency arose after the district court found him competent.

## I. BACKGROUND

In December 2016, Cometa, a military veteran, went to a Veterans Affairs clinic in The Villages, Florida, with two semiautomatic firearms and ammunition. He banged on the office door of a psychiatrist, who opened the door and saw Cometa brandishing a rifle and saying, "Now you're going to have to listen to me." The psychiatrist and another person in the room struggled with Cometa for the rifle, which discharged twice. Veterans Affairs officers soon arrived, wrestled the rifle from Cometa, and took him into custody. No one was injured in the incident. In an interview with the Federal Bureau of Investigation, Cometa said that he was unhappy with the treatment he received from the clinic for his chronic pain and posttraumatic stress disorder.

A grand jury returned a two-count indictment against Cometa about a week later. It and a superseding indictment charged Cometa with one count of forcibly assaulting, intimidating, or interfering with a federal employee—the psychiatrist—while using a firearm, 18 U.S.C. § 111(a), (b), one count of forcibly resisting or

2

opposing federal employees—the two Veterans Affairs officers—while using a firearm, *id.* § 111(a), (b), and one count of using, carrying, and discharging a firearm during and in relation to the offenses in counts one and two, which were crimes of violence, *id.* § 924(c)(1)(A)(iii).

Two days after Cometa's arrest, his counsel hired Dr. Michel Herkov, a licensed psychologist, to evaluate his competency. Dr. Herkov briefly met with Cometa, performed a "mental status examination," and interviewed Cometa and his counsel. Dr. Herkov opined that Cometa was currently suffering from bipolar disorder and was incompetent because, most importantly, he would have difficulty assisting with his defense. But he also predicted that treatment could restore Cometa's competency within 60 to 90 days.

Cometa filed an unopposed motion for a competency evaluation based on Dr. Herkov's report. *See* 18 U.S.C. § 4241(a), (b). The district court granted the motion, after which Dr. Lisa Feldman, a forensic psychologist, evaluated Cometa. After two months, Dr. Feldman concluded that although Cometa refused "to participate in any formal psychological testing," he was "actively displaying symptoms of a mental disorder" and was not competent.

The district court held a competency hearing in May 2017. Relying on Dr. Feldman's evaluation and the parties' agreement that the district court should follow her recommendation, the district court ordered Cometa to be committed to

3

the custody of the Attorney General to have his competency restored. Mental-health professionals, including Dr. Evan Du Bois, a forensic psychologist, evaluated and treated Cometa for about four months.

Dr. Du Bois diagnosed Cometa with borderline personality disorder and posttraumatic stress disorder, but he reported that Cometa had become competent after treatment. Cometa returned to a local jail.

A couple months later, defense counsel told the district court that she and Dr. Herkov were concerned that Cometa had become incompetent again because the jail was not forcing him to take his medication. Cometa's counsel later filed notice of her intent to rely on the insanity defense and a report by Dr. Herkov that questioned Cometa's competence. Because of the insanity-defense notice, the government moved for an examination to determine the existence of insanity at the time of the offense. The district court ordered Cometa to be re-committed to the custody of the Attorney General for both an evaluation for the insanity defense and of his competency.

In June 2018, Dr. Du Bois reported that Cometa remained competent to stand trial. He explained that Cometa "is suffering from a mental disease" and that his personality disorder causes his "presentation . . . to fluctuate" because of changes in his environment and his perception that "his needs are not being met." But, he opined, Cometa's fluctuations did not reflect that he was incompetent. He

4

stated that medication could help but that it might be unnecessary because Cometa was competent during the evaluation period even though he was not on medication. He also reported that Cometa had made statements that could suggest a lack of understanding, such as that he wanted to plead guilty on the condition of being sentenced to death and executed within 30 days. But Dr. Du Bois relied on Cometa's numerous rational and accurate statements to opine that Cometa understood the proceedings. Cometa discussed with Dr. Du Bois the penalties he faced and possible defense strategies, such as requesting a change in venue because of his concern that "the political atmosphere and public sentiment" in the area following a school shooting could hurt his case. Dr. Du Bois also opined that Cometa did not satisfy the requirements for the insanity defense.

The district court held a competency hearing and arraignment in July 2018. Cometa was represented by new counsel, whom the district court appointed after Cometa stated in a *pro se* motion that he told his previous counsel not to pursue the insanity defense and that he was frustrated about the delay from the competency evaluations because he was competent and had been the entire time. His new counsel said that he believed Cometa was competent based on their interactions. And after reviewing Dr. Du Bois's report with Cometa, counsel said he and Cometa had no problem with the district court relying on that report for its competency finding. He also acknowledged that he spoke to Dr. Herkov before the

5

hearing—who had opined six months earlier that Cometa was incompetent—and that Dr. Herkov said "that competency is such a fluid thing that his opinion wouldn't have any validity today anyway." The district court found that Cometa was competent. *See* 18 U.S.C. § 4241(e). It then conducted the arraignment. The government read the charges and potential penalties, the district court informed Cometa of his rights, Cometa confirmed that he understood, and he pleaded not guilty by reason of insanity.

The district court held another arraignment after the grand jury returned the superseding indictment, which added the count of forcibly resisting or opposing the Veterans Affairs officers with a firearm. At the second arraignment, Cometa refused to confirm his understanding of the charges or penalties he faced and argued that "everything that's happened in this court has been a violation of my constitutional rights." Cometa continued to complain about the government violating his constitutional rights and trying to kill him, and Cometa's counsel explained that Cometa was feeling "anguish" and was "hung up on the idea" that the superseding indictment would cause delay. When the district court asked Cometa how he wanted to plead, Cometa said his lawyer knew his desired plea, and his counsel explained that Cometa had instructed him "on a couple of previous occasions to enter a . . . plea of guilty with the condition that he be put to death within 30 days." Counsel said that these statements did not make him think

6

Cometa was incompetent. The district court found that Cometa understood the charges and penalties, even though he refused to affirmatively say so, and that Cometa was "upset and visibly annoyed that new charges were filed."

Shortly before trial, the district court granted Cometa's request for a continuance and recommended transferring Cometa to a different jail where Cometa believed he would receive better treatment. The district court found that Cometa's "competency can be fluid and that his mental state can be fragile."

The trial began in December 2018, about five months after the district court found that Cometa was competent. On the first day, Cometa's counsel told the district court that he "would suggest some type of competency inquiry, if the court or the government were interested" because he became "a little bit concerned" the previous day about Cometa's competency. He explained that Cometa was back at the previous jail, which might be affecting him. He also reviewed Cometa's history of competency examinations and hearings and said that Dr. Herkov was unavailable to speak to Cometa that day because counsel was not going to have him testify until later that week. Counsel also qualified that when he said Cometa was competent before the first arraignment he had not reviewed Dr. Herkov's report from December 2017, which opined that Cometa was incompetent, because Cometa's previous counsel had not provided it.

7

Cometa told the district court that he was unhappy with his treatment in the jail and that he wanted new counsel. He said he had not received his medication since returning to the jail, but the district court found that this allegation was "simply incorrect" the next day when it learned that Cometa had been refusing to accept his medication. Cometa also disagreed with his counsel's decision to pursue the insanity defense. Cometa said he needed new counsel because he did not "feel [he was] competent enough to represent [himself], even though [he was] competent to stand trial." After hearing from Cometa and his counsel, the district court found "that Mr. Cometa ha[d] not expressed good cause to discharge" his counsel because he established only that they "simply disagree[d]," not that there was "a complete breakdown of communication or an irreconcilable conflict." Indeed, it found that they conferred as clients and lawyers should.

Cometa was unhappy that he was not appointed new counsel and said he did not want to be present during trial. The district court sought to confirm whether Cometa wanted to be present and whether he opposed his counsel's reliance on the insanity defense, but Cometa refused to answer. After a brief recess, Cometa said that because he was "under considerable psychological and physical duress," his "only option [was] to plead guilty and throw [himself] on the mercy of the Court." The district court refused to accept his plea and told counsel he was "free to proceed in the best interests" of his client, who asserted he was an "enemy

8

combatant" and "a POW being tried." The district court said, "I'm . . . beginning now to think, Mr. Cometa, maybe we need to have you evaluated. Or are you just going to put on a show?" Cometa said he was "not putting on a show," that he and other veterans swore an oath to the Constitution, and that he continues to take that oath seriously. The district court told Cometa's counsel that he could talk to Cometa at lunch about entering a guilty plea, but the trial would proceed until then.

Cometa's counsel and the government presented testimony about Cometa's mental health. Dr. Herkov explained that Cometa "had a long history of severe mental illness." Cometa had a history of suffering from paranoia, delusions, and hearing voices, and he also was diagnosed with bipolar disorder and had been prescribed psychotropic drugs, which doctors prescribe only if "they have real concerns." He also explained that Cometa had a history of refusing to take his medicine, which is common in people suffering from paranoia. Dr. Du Bois testified for the government. He explained that he spent over 200 days evaluating Cometa and diagnosed him with posttraumatic stress disorder and borderline personality disorder but not bipolar disorder. Borderline personality disorder is ongoing and possibly causes "fluctuations in mood and irritability" but does not have the "big spikes of mania" that occur in bipolar disorder.

Before the end of trial, the district court asked Cometa whether he planned to testify. The district court explained Cometa's rights, but Cometa said he was

9

"not sure [he] completely underst[ood]." So the district court explained again, and Cometa said "there [were] a lot of factors that [were] weighing on [his] mind . . . [a]bout [his] ability to testify." He also said he felt "undue pressure that [was] interfering with [his] ability to make that choice." Cometa conferred with his counsel, and they decided that Cometa would think about it overnight and announce his decision in the morning.

In the morning, Cometa said that he would like to testify but that he had "been under extreme emotional and physical duress for . . . the whole week," and that "mental duress and physical duress" made him feel unprepared to testify. The district court explained that "[t]rials are stressful, particularly for defendants." And it found that Cometa was "clearly physically and mentally capable of testifying" and was coherent and understood his rights, even though he was "pretending not to be able to." Cometa complained that he faced "very serious charges" with the possibility of imprisonment for the rest of his life and that "several factors outside of [his] control . . . ha[d] interfered with [his] right to assist [his] defense counsel." After a brief recess, Cometa's counsel informed the district court that Cometa chose not to testify, and Cometa confirmed his decision. The jury found Cometa guilty as charged.

Three months later, the district court held a hearing on Cometa's *pro se* motion to proceed *pro se* and to receive a presentence psychological evaluation.

10

Cometa was unhappy with his counsel's handling of his case and complained of "irreconcilable differences." When the district court questioned Cometa to make sure his requested waiver was knowing and voluntary, Cometa said he understood that he was convicted but that he was "wrongly convicted because [his] rights [were] violated." And he said he "underst[ood] that the United States Government ha[d] been trying to take [his] life for the last eight years." Cometa also raised objections to the presentence investigation report, complained about his treatment in the jail, and explained that he wanted a psychological examination because the report alleged that he was a danger to the community.

The district court again tried to determine whether Cometa's requested waiver of counsel was knowing and voluntary by reviewing the penalties in the report and asking if Cometa understood. Cometa confirmed that the maximum penalties were "[b]etter known as life" because of his age, and he understood that "the minimum recommended [sentence] is 190 months." Cometa confirmed that he understood the sentencing procedure but said he did not understand why the district court did not have "the guts to come out and kill [him] right away." He said he felt he was being tortured in jail. His counsel confirmed that Cometa was unhappy with his representation. He also mentioned that Cometa may be seeking a competency evaluation, but Cometa confirmed that he was not. Cometa made clear he wanted a psychological evaluation because of the recommended enhancement

11

in the report for being a danger to the community and because he wanted to argue for a downward departure based on reduced mental capacity at the time of the crime.

The district court found that although it was unwise for Cometa to represent himself, he knowingly and voluntarily chose to do so, and it dismissed his counsel and allowed him to proceed *pro se*. The district court also denied Cometa's request for a psychological examination because it already had the benefit of multiple psychological reports.

The district court sentenced Cometa in March 2019. Cometa had moved for the appointment of counsel, but the district court explained that Cometa had knowingly and voluntarily waived his right to counsel and was not entitled to new counsel. Cometa then unsuccessfully requested a continuance pending a Supreme Court decision that he thought might be relevant and unsuccessfully objected to portions of the presentence investigation report. And he explained his history of mental-health issues and apologized for committing the crime. The district court stated that "[w]ithout question, . . . Mr. Cometa suffers and did suffer from a severe mental disease or defect which impaired his ability to control his conduct." It sentenced Cometa to concurrent 87-month terms of imprisonment on counts one and two and a consecutive 120-month term of imprisonment on count three. It also

recommended that the Bureau of Prisons evaluate Cometa to find an appropriate prison because "Cometa need[ed] mental health treatment and counseling."

## II. STANDARD OF REVIEW

We review for abuse of discretion the decision of a district court not to hold a competency hearing. *United States v. Perkins*, 787 F.3d 1329, 1339 (11th Cir. 2015).

## III. DISCUSSION

Defendants have a right under the Due Process Clause of the Fifth Amendment not to be tried or convicted while incompetent. *Id.* "[W]ithout competence, a defendant cannot meaningfully exercise his other constitutionally guaranteed rights," and "trying an incompetent defendant is like trying an absent defendant." *United States v. Wingo*, 789 F.3d 1226, 1235 (11th Cir. 2015); *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975). A defendant is competent if he "possess[es] the 'capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'" *Wingo*, 789 F.3d at 1234–35 (quoting *Drope*, 420 U.S. at 171). A defendant may be competent to stand trial even if he "suffer[s] from severe mental illness." *Indiana v. Edwards*, 554 U.S. 164, 175–76, 178 (2008); *see also Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995). Competency is a requirement throughout an entire trial. *Perkins*, 787 F.3d at 1339.

The Due Process Clause also guarantees a right to a competency hearing when "the court learns of information that raises a bona fide doubt regarding the defendant's competence." *Wingo*, 789 F.3d at 1235 (alteration adopted) (internal quotation marks omitted); *see also James v. Singletary*, 957 F.2d 1562, 1569–70 (11th Cir. 1992) (comparing claims challenging competency with claims challenging the failure to hold a hearing); *Medina*, 59 F.3d at 1106 (same). This right is also guaranteed by a statute, 18 U.S.C. § 4241(a), which requires a district court to order *sua sponte* a competency hearing if it "has 'reasonable cause to believe that the defendant [is not competent],'" *United States v. Dixon*, 901 F.3d 1322, 1341 (11th Cir. 2018) (alteration in original) (quoting 18 U.S.C. § 4241(a)). The bona-fide-doubt standard satisfies the reasonable-cause requirement in section 4241(a). *Wingo*, 789 F.3d at 1236.

To determine whether a hearing is required, three factors are relevant: "prior medical opinion regarding the defendant's competence," "evidence of the defendant's irrational behavior," and "his demeanor at trial." *Dixon*, 901 F.3d at 1341 (internal quotation marks omitted). "[T]here are, of course, no fixed or immutable signs which invariably indicate the need for [a hearing]," so courts "must consider the aggregate of evidence." *Wingo*, 789 F.3d at 1236 (internal quotation marks omitted).

14

Cometa argues that the district court should have held a competency hearing because it knew that he was previously declared incompetent, that he needed to take medication to restore his competency, that he had not received his medication for several days before the trial, that his attorney requested a competency evaluation before trial, and that he "exhibited other indications" that "called his competency into question." The government responds that the district court did not abuse its discretion because it found before trial "that Cometa was competent to stand trial and nothing that occurred after that required [it] to revisit that determination." We agree with the government because Cometa demonstrated a continued understanding of the proceedings, ability to consult with his counsel, and ability to assist with his defense. The indicia of incompetency on which Cometa relies did not compel the conclusion that a bona fide doubt about Cometa's competency arose.

Cometa argues that prior medical opinions supported the need for a hearing, but we disagree. Dr. Du Bois evaluated Cometa twice and reported that Cometa was competent, even though he was not taking medication and made statements that could suggest incompetence, such as a desire to plead guilty and be executed within 30 days. Cometa argues that the opinions of Dr. Herkov and Dr. Feldman are entitled to more weight, but we see no abuse of discretion, especially because of the length and recency of Dr. Du Bois's evaluations. *See Pierce v. Underwood*,

15

487 U.S. 552, 559–60 (1988) (explaining that the abuse-of-discretion standard is deferential because district courts are in a better position to evaluate evidence). Nor do we agree that Dr. Du Bois's opinion and the district court's competency finding that relied on his report are not entitled to weight because of defense counsel's stipulation to the report and failure to review Dr. Herkov's latest report. The district court allowed counsel to review Dr. Du Bois's report at the hearing before he chose to stipulate to it, and counsel said that he spoke to Dr. Herkov, who told him that his evaluation was not recent enough to be relevant. And any other limitations on the presentation of evidence at the hearing were the choice of Cometa's counsel, not the district court. The district court read Dr. Du Bois's report, observed Cometa, heard from Cometa's counsel, and gave Cometa's counsel the opportunity to present whatever evidence he wanted.

Evidence of Cometa's irrational behavior also did not compel a hearing. Cometa highlights his stated desire at the second arraignment to plead guilty on the condition of being executed within 30 days, his many statements about the government "trying to kill" him, his statement that he could not represent himself at trial because of his mental illness, and his refusal to take his medication. But Cometa made similar statements to Dr. Du Bois, who nevertheless opined that Cometa was competent in the light of Cometa's many accurate and rational statements about the proceedings. The existence of these kinds of statements at the

16

time of the competency finding supports that Cometa *continuing* to make these kinds of statements did not give rise to a bona fide doubt about his competence.

And Dr. Du Bois's opinion is supported by the record, which establishes that Cometa continued to understand the proceedings—including the actual penalties he faced—and to work with his counsel. For example, Cometa confirmed his understanding of the sentencing procedure and rationally discussed the penalties he faced at the hearing to waive his right to counsel before sentencing. And he communicated with his counsel throughout trial and sought his guidance when he was faced with difficult decisions such as whether to waive his right to counsel and whether to testify. Cometa's resistance to his counsel's reliance on the insanity defense does not change this conclusion. Refusing to work with defense counsel is not necessarily proof of incompetency because what matters is the *ability* to work with counsel. *United States v. Heard*, 762 F.3d 538, 542 (6th Cir. 2014); *United States v. Flores-Martinez*, 677 F.3d 699, 707 (5th Cir. 2012); *United States v. Battle*, 613 F.3d 258, 262–63 (D.C. Cir. 2010); *United States v. Vachon*, 869 F.2d 653, 655 (1st Cir. 1989). Dr. Du Bois opined that Cometa was capable of assisting his counsel, even though his "guarded and hostile presentation ma[de] it difficult to work with [him] and obtain his cooperation." And as discussed, Cometa demonstrated that ability. For example, at the hearing on Cometa's request for a

17

continuance, his counsel said that Cometa was open to pursuing the insanity defense and was reviewing paperwork related to his mental-health evaluations.

Cometa's other arguments regarding his purportedly irrational behavior also lack merit. Although Cometa stated that he did not feel competent enough to represent himself, he qualified that statement by saying that he was competent to stand trial. Whatever relevance a defendant's own opinion of his mental state may have, Cometa continued to demonstrate his competence to stand trial through his understanding of the proceedings and communications with counsel. Nor did Cometa's intermittent refusal to take his medication raise a bona fide doubt because Dr. Du Bois opined that medication was likely unnecessary to maintain Cometa's competency.

Cometa's demeanor at trial also did not compel a hearing. As Cometa concedes, the district court found at several points that he was coherent and able to communicate with his counsel. But he argues that we should place more weight on his counsel's request for a hearing the first day of trial and again at the hearing before sentencing. He also argues that he felt "undue pressure" about whether to testify, that he did not "completely understand" his right, and that he appeared "discombobulated" at various points.

To be sure, Cometa's counsel expressed concern about Cometa's competency the morning of the first day of trial and "suggest[ed] some type of

18

competency inquiry, if the court or the government were interested." But the district court spent considerable time speaking to Cometa about his rights, his trial strategy, and his complaints about his counsel before beginning the trial. After Cometa said he was an "enemy combatant, a POW being tried," the district court said it was "starting . . . to think, Mr. Cometa, maybe we need to have you evaluated. Or are you just going to put on a show?"

The district court did not abuse its discretion in not holding a hearing because it observed Cometa in person and could have concluded that Dr. Du Bois's report supported that Cometa was competent but acting out because of his frustration that things were not going his way—he had recently returned to the jail he disliked, and the district court had denied his request for new counsel, allowed his counsel to rely on the insanity defense, and refused to accept his guilty plea. And before sentencing, Cometa's counsel did not actually suggest that a competency hearing was necessary but only that he thought Cometa was requesting one, which he was not.

Nor do we agree that the district court abused its discretion because Cometa appeared "discombobulated." Cometa supports this contention only by referencing his statements at the hearing on whether he would testify that he felt "undue pressure" and "duress" and did not "completely understand" his right to testify. But, as Cometa concedes, the district court found Cometa to be "coherent," to

19

understand his rights, and to be capable of testifying. We see no clear error in that assessment.

Considering these factors alone or in the aggregate establishes that the district court did not abuse its discretion by not holding competency hearings before the trial or sentencing. The district court spent considerable time observing and speaking to Cometa, and Cometa demonstrated his understanding of the proceedings, ability to work with his counsel, and ability to assist with his defense.

## IV. CONCLUSION

We **AFFIRM** Cometa's conviction and sentence.