[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10733
Non-Argument Calendar

_____

D.C. Docket No. 2:19-cr-00117-JES-NPM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH R. JACKSON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 1, 2021)

Before NEWSOM, LAGOA and BRASHER, Circuit Judges.

PER CURIAM:

Kenneth R. Jackson, Jr., appeals his conviction and sentence for knowingly failing to surrender for service of his sentence, in violation of 18 U.S.C. §§ 3146(a)(2), (b)(1)(A)(i), after he represented himself during his trial and sentencing.  On appeal and with the benefit of counsel, Jackson argues that the district court erred in two ways.  First, he says that the district court's failure to inquire about his mental health ran afoul of the Supreme Court's decision in *Indiana v. Edwards*, 554 U.S. 164 (2008), and thereby violated his rights under the Sixth Amendment.  Second, he says that the district court's failure to order a competency hearing *sua sponte* violated his rights under the Fifth Amendment's Due Process Clause and 18 U.S.C. § 4241(a).  After careful review, we affirm.

## I

### A

Jackson first argues that the district court should have asked him specifically about his mental-health history before allowing him to proceed pro se.  The Supreme Court long ago held that the Sixth Amendment protects the right of criminal defendants to represent themselves, *see Faretta v. California*, 422 U.S. 806, 819 (1975), though it has since explained that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so," *Indiana v. Edwards*, 554 U.S. 164, 177–78 (2008).

On that rationale, the *Edwards* Court held that a State may insist that a defendant who isn't mentally competent to conduct his own defense proceed to trial with counsel, even if he'd rather represent himself.  554 U.S. at 167.  Based on *Edwards*, Jackson argues that the district court should have inquired as to his mental health and expressly determined whether he was competent to conduct trial proceedings by himself.

Because this issue is raised for the first time on appeal, we review for plain error.  *United States v. Presendieu*, 880 F.3d 1228, 1237 (11th Cir. 2018).  Plain error occurs where: (1) there is an error; (2) that is plain; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.* at 1237–38.  To qualify as plain error, an error "error must be plain now, in light of recent Supreme Court and Eleventh Circuit developments."  *United States v. Smith*, 459 F.3d 1276, 1283 (11th Cir. 2006).  We see no such error here.

Jackson has pointed to no decision from this Court or the Supreme Court demonstrating that the district court needed to make a more specific inquiry into Jackson's mental health.  He relies on the Court's decision in *Edwards*, but it cannot bear the weight he would place on it.  Jackson contends that *Edwards* added "the requirement that the court determine a defendant was mentally competent to

3

represent himself at trial before permitting him to do so." Appellant's Br. at 12.

That is incorrect.

To be sure, the *Edwards* Court explained that the baseline level of competency required to stand trial alone may be insufficient to demonstrate a defendant's competence to represent himself, "given the different capacities needed to proceed to trial without counsel" as opposed to merely assisting counsel. 554 U.S. at 177. But, although the *Edwards* Court concluded that "the Constitution *permits* States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves," it declined to impose "a more specific standard" that would have *required* States to deny the right of self-representation to other defendants. *Id.* at 178 (emphasis added); *see also United States v. Posadas-Aguilera*, 336 F. App'x 970, 976 n.5 (11th Cir. 2009) (explaining that outside of instances of severe mental illness, "we concur with our brethren on the Seventh Circuit and read *Edwards* to hold that 'the Constitution *may* . . . allow the trial judge to block a defendant's request to go it alone, but it certainly doesn't require it.'" (quoting *United States v. Berry*, 565 F.3d 385, 391 (7th Cir. 2009) (alterations omitted))).[1] Some of

---

[1] Although *Edwards* dealt with a decision from a state court, we, like other courts, have looked to *Edwards* for guidance in the context of federal prosecutions as well. *See United States v. Garey*,

Jackson's statements before the district court reflect idiosyncratic views that might be broadly characterized as part of a "sovereign citizen" ideology,[2] but he hasn't contended here that he was or is severely mentally ill, and *Edwards* simply didn't establish the sort of hard-and-fast rule that Jackson suggests it did.

Moreover, the *Edwards* Court emphasized that "the trial judge . . . will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." 554 U.S. at 177. Here, the district court judge was well-aware of Jackson's individualized circumstances, having presided over his initial criminal trial. Furthermore, the district court judge engaged in an extensive back and forth with Jackson concerning his right to self-representation and the risks attendant to exercising that right. During that exchange, Jackson stated that he had represented himself in two prior actions, and that, after being warned about the nature of the charges against him, the potential penalty he faced, and the difficulties of self-representation, he "100 percent" wanted to represent himself. Having heard from Jackson and discussed the matter with Jackson's then-attorney and the attorney for the government, the district court

540 F.3d 1253, 1261, 1268 n.9 (11th Cir. 2008) (en banc); *see also United States v. DeShazer*, 554 F.3d 1281, 1290 (10th Cir. 2009).

[2] Although Jackson disputed the use of the term "sovereign citizen" in reference to him, his statements to the effect that he was "Karim Masudah Bey" and a part "of the Cherokee Nation of Moors" indicated that he relied in some sense on tribal sovereign immunity as a source of his own "sovereign immunity at law." Such arguments, courts have recognized, overlap with those put forward by purportedly "sovereign citizens." *Cf. United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017) (collecting cases).

concluded that Jackson had knowingly and voluntarily waived his right to counsel. *See United States v. Stanley*, 739 F.3d 633, 645–49 (11th Cir. 2014).

Given the state of the law and the record before us, we cannot say that the district court plainly erred in that respect.

**B**

Jackson also argues that the district court's failure to order a competency hearing *sua sponte* violated his right to due process under the Fifth Amendment and ran afoul of 18 U.S.C. § 4241(a), which sometimes requires district courts to order such hearings. This argument, like his challenge based on *Edwards*, relies on the statements Jackson made that reflect his views as an adherent of what one might call a "sovereign citizen" ideology. Our review is for abuse of discretion. *United States v. Perkins*, 787 F.3d 1329, 1339 (11th Cir. 2015).[3] We find none here.

---

[3] Jackson assumed plain-error review applies, but as the government notes, although the issue has been raised for the first time on appeal, this Court applies abuse-of-discretion review to the issue of competency to stand trial. For that proposition, it points to *United States v. Williams*, 468 F.2d 819, 820 (5th Cir. 1972), a decision from the Old Fifth that binds us, *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). We acknowledge that *Williams* involved a statutory claim based on 18 U.S.C. § 4244, *see* 468 F.2d at 819, which was eventually replaced by 18 U.S.C. § 4241, *see United States v. Izquierdo*, 448 F.3d 1269, 1278 n.8 (11th Cir. 2006), but we seem to have generally applied abuse-of-discretion review to the broader question of competency to stand trial, *see, e.g.*, *United States v. Cometa*, 966 F.3d 1285, 1291 (11th Cir. 2020). In that much, we appear to have sided with the majority of our sister circuits. *See United States v. Lindsey*, 339 F. App'x 956, 960 n.4 (11th Cir. 2009) (collecting cases).

We recently surveyed this territory in *United States v. Cometa*, 966 F.3d 1285 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1433 (2021). To start, the Due Process Clause forbids defendants from being tried or convicted while incompetent. *Id.* at 1291. The Due Process Clause also guarantees a right to a competency hearing when "the court learns of information that raises a bona fide doubt regarding the defendant's competence." *Id.* (quotation marks omitted). Likewise, 18 U.S.C. § 4241(a) requires a district court to order *sua sponte* a competency hearing if it "has reasonable cause to believe that the defendant [is not competent]." *Id.* (quotation marks omitted); 18 U.S.C. § 4241(a). The bona-fide-doubt standard satisfies the reasonable-cause requirement in § 4241(a). *Cometa*, 966 F.3d at 1291. To determine whether a hearing is required, courts consider three factors: (1) "prior medical opinion regarding the defendant's competence;" (2) "evidence of the defendant's irrational behavior;" and (3) "his demeanor at trial." *Id.* (quotation marks omitted). "'[T]here are, of course, no fixed or immutable signs which invariably indicate the need for [a hearing],' so courts 'must consider the aggregate of evidence.'" *Id.*

Considering the aggregate of evidence here, we conclude that the district court didn't abuse its discretion by not conducting a competency hearing *sua sponte*. As to prior medical opinion concerning Jackson's competence, we have little to go on. We do think it noteworthy that neither Jackson's first (and now

7

former) attorney in this case nor Jackson's counsel in his immediately antecedent criminal trial ever raised the issue of his competence. *See Watts v. Singletary*, 87 F.3d 1282, 1288 (11th Cir. 1996) ("[F]ailure of defense counsel to raise the competency issue at trial, while not dispositive, is evidence that the defendant's competency was not really in doubt . . . ."). More importantly, we have little evidence of irrational behavior on Jackson's part, and his demeanor at trial and sentencing gives us no reason to second-guess the district court on this issue.

Consider Jackson's efforts in representing himself. During the jury selection process, Jackson exercised several preemptory challenges and made one successful challenge for cause. He presented an opening statement in which he asked the jury to keep an open mind and examine the evidence before it rather than unquestioningly accepting the government's account, and he cross-examined several witnesses. Jackson also moved for a judgment of acquittal, and after that was denied, he presented a closing argument. At sentencing, he acknowledged having read and reviewed the Presentence Report, and he raised a number of objections to it. Some of those objections proved successful. And Jackson also raised a question as to whether he would have to serve his newly imposed term of supervised release consecutively to the term of supervised release imposed as a result of his prior conviction. After some discussion, the court decided to have the new term of supervised release run concurrently with the previously imposed term

8

of supervised release.  And throughout proceedings, Jackson was mostly polite and coherent in his dealings with others.  As such, his behavior and his demeanor don't seem to have suggested incompetence.

Considering the aggregate of the evidence, then, we conclude that the district court had no reason for bona fide doubt as to Jackson's competence.  *Cometa*, 966 F.3d at 1291.  Accordingly, we affirm.[4]

**AFFIRMED.**

---

[4] Following the conclusion of briefing in this appeal, Jackson's attorney twice moved to withdraw as counsel.  We deny those motions as moot.