[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11977

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEMETRIUS LAMAR JACKSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket Nos. 4:19-cr-00099-LGW-CLR-1,
4:19-cr-00049-LGW-CLR-1

_____

Before WILSON, JORDAN, and BRANCH, Circuit Judges.

PER CURIAM:

Demetrius Jackson appeals from his convictions for discharging and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i)–(ii); conspiracy to use and carry a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(o); carjacking, in violation of 18 U.S.C. § 2119; attempted carjacking, in violation of 18 U.S.C. § 2119; and interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a).  He argues that the district court abused its discretion in denying his motions to substitute counsel and in denying his motion to continue his sentencing hearing for a psychological evaluation to determine competency.

The government, in turn, has filed a motion to dismiss the appeal pursuant to an appeal waiver that a panel of our Court carried with the case.  After careful review, we affirm.[1]

**I.**

We review the denial of a motion for new counsel under an abuse of discretion standard.  *United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997).  "The district court may be reversed only if its decision is arbitrary or unreasonable."  *United States v.*

_____

[1] Additionally, the government's motion to dismiss the appeal pursuant to an appeal waiver is DENIED as MOOT.

*Buckles*, 843 F.2d 469, 471 (11th Cir. 1988).  A defendant has a right to counsel under the Sixth Amendment; however, except for good cause, he does not have an unqualified right to counsel of his choice or the right to demand different counsel. *United States v. Garey*, 540 F.3d 1253, 1263 (11th Cir. 2008) (en banc).  "Good cause in this context means a fundamental problem, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Id.* (internal quotation marks omitted).  A "general loss of confidence or trust" in counsel by itself does not constitute good cause. *United States v. Joyner*, 899 F.3d 1199, 1205–06 (11th Cir. 2018) (per curiam) (internal quotation marks omitted).  Similarly, a defendant's unilateral refusal to communicate with appointed counsel is not good cause. *United States v. Amede*, 977 F.3d 1086, 1106 (11th Cir. 2020).

Here, the district court did not abuse its discretion in denying Jackson's motions for new counsel.  Jackson maintains that his attorney, Henifin, frequently used inaccessible legal language to convey important concepts relevant to the proceeding.  As a result, Jackson claims that he had difficulty comprehending critical elements of the process, such as sentencing procedures.  But a review of the record fails to show an irreconcilable conflict or breakdown in communication.  Henifin and Jackson met twenty times and had significant discussions during twelve of those meetings.  Although Henifin believed there was a breakdown in communication, any breakdown was a result of Jackson's threats and his refusal to speak to Henifin.  We have addressed a defendant's refusal to speak with

counsel before; Jackson's actions do not constitute good cause. *See id.* at 1104–06.

Although Jackson did not think Henifin advocated zealously, the record shows that Henifin obtained a plea agreement that dismissed twenty charges, leaving Jackson to plead guilty to 6 counts. Further, Jackson's lack of confidence in Henifin, by itself, does not constitute good cause. *See Joyner*, 899 F.3d at 1205–06.

Thus, the district court did not abuse its discretion in denying Jackson's motions for new counsel.

## II.

We review a district court's denial of a motion for a continuance for abuse of discretion. *United States v. Chalker*, 966 F.3d 1177, 1193 (11th Cir. 2020). A district court's competency determination is reviewed for clear error. *United States v. Hogan*, 986 F.2d 1364, 1372 (11th Cir. 1993). "A finding of fact is clearly erroneous only when we are left with a definite and firm conviction that a mistake has been committed." *Id.*

The Due Process Clause of the Fifth Amendment prohibits the government from proceeding against a defendant while he is incompetent. *United States v. Cometa*, 966 F.3d 1285, 1291 (11th Cir. 2020). At any point before sentencing, the defendant may file a motion for a hearing to determine his mental competency, and "[t]he court shall grant the motion . . . if there is reasonable cause to believe that the defendant . . . is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). Absent a bona fide

doubt as to a defendant's competency, the motion may be denied. *Cometa*, 966 F.3d at 1291.

Here, the district court did not abuse its discretion in denying Jackson's motion for a continuance of his sentencing because there was no bona fide doubt as to his competency. The district court noted that Jackson assisted in his defense by asking perceptive questions. Additionally, Jackson's apology to a victim and verbal acknowledgement that he was going to prison showed Jackson's understanding of the nature and consequences of the proceedings against him.

Although the district court was informed that Jackson attempted to commit suicide at his sentencing, a paramedic assessed that Jackson did not show any signs of distress and was alert and responsive. Additionally, the district court noted that Jackson was alert and actively interacting in the proceedings before it ruled on his motions to continue and for a psychological evaluation. Further, the record reflects that Jackson previously delayed the case after slamming his hand in a door before his change of plea hearing. Jackson does not point to anything in the record that undermines our confidence in the district court's decision. Accordingly, we affirm the district court's denial of Jackson's motion for continuance.

**AFFIRMED.**

JORDAN, J., Dissenting                    21-11977

JORDAN, Circuit Judge, Dissenting.

With respect, I dissent. In my view, the district court abused its discretion in denying a continuance and a psychiatric evaluation of Mr. Jackson following his suicide attempt on the day of sentencing.

Right before his sentencing hearing, Mr. Jackson tried to hang himself. Upon learning of the suicide attempt, Mr. Jackson's counsel understandably moved for a continuance of the sentencing hearing and for a psychiatric evaluation of Mr. Jackson. The district court denied these motions after hearing from a paramedic and a deputy U.S. marshal.

The first problem is that the paramedic only saw Mr. Jackson—who did not say anything—for just 5 minutes. The paramedic expressly stated that without Mr. Jackson answering questions, "it was very hard for him to be able to properly assess him." D.E. 66 at 9.

Moreover, no one conducted a mental evaluation or assessment of Mr. Jackson. And although there was a video camera in Mr. Jackson's holding cell, the deputy U.S. marshal did not know if the camera was recording, did not have an opportunity to review any recording, and did not talk to anyone who may have had an opportunity to review the camera. *See id*. at 15–16. This is not surprising given the quick progression of events—at 12:05 p.m., the proceedings were called to order; shortly thereafter, a deputy U.S. marshal advised the district court that deputies and some inmates had *just* intervened in Mr. Jackson's attempted suicide attempt; at

21-11977              JORDAN, J., Dissenting              2

12:18 p.m., the district court ordered a recess; and by 1:26 p.m. the proceedings had resumed.

At the sentencing hearing that followed, Mr. Jackson expressed remorse for his actions during his allocution. He apologized to the testifying victim, to her family, and to the district court. He said that he wished all of the victims were there "because I really want to tell everybody one by one I apologize." *Id*. at 54. Mr. Jackson explained that it was as if he "was walking around without a brain, like my brain was empty, that was somebody telling me to do something. I'm just moving. I just was a body." *Id*. He acknowledged that he "did wrong" and stated he was learning from this situation that "it's more [h]onor to do right than do wrong." *Id*.at 53. He also told his mother that it was not her fault, and said he was not a bad person, not a "throwaway." *Id*. at 54, 56–57.

After Mr. Jackson's allocution, the district court began to pronounce the sentence. Before the district court could finish, however, Mr. Jackson "made a rush toward the prosecutor's table, and the [deputy U.S.] marshals descended and were able to pin him" and he was "subdued and taken back to the holding area in the courthouse." *Id*. at 61. The transcript reads like this:

> Marshal: Get in here.
> Marshal: Stop. Stop.
> The Defendant: Kill me.
> Marshal: We need help in here.
> Marshal: Breathe.
> The Defendant: Kill me. (Unintelligible). Kill me. (Unintelligible).

3                    JORDAN, J., Dissenting                    21-11977

*Id*. at 59.

The district court then took another recess.  That same afternoon, at 4:19 p.m., the district court resumed proceedings, and Mr. Jackson appeared—according to the district court—"secured in a chair" and "behaving well."  *Id*. at 62.  As the district court continued to pronounce the sentence, Mr. Jackson began interrupting with assertions in stark contrast to his previous statement apologizing to the victims and the district court:

> The Defendant: I ain't even go hard.  So imagine if ain't had no safety on my gun.
> The Court: Marshal, if you'll –
> The Defendant: Imagine if I really put thought and tried to hurt people.  If you going to kill me, give me the death penalty.  Don't play with me, bro.  Y'all tying me down, sentence me, kill me.
> …
> The Defendant: I mean, I could have went a hundred times harder.
> …
> The Defendant: I could have went a million times harder.  You lucky – you lucky you wasn't in that car wash or something.

*Id*. at 63–65.

A lot happened on the day of the sentencing hearing.  Mr. Jackson attempted to commit suicide and saw a paramedic for only 5 minutes.  His counsel's motions for a continuance and a psychiatric evaluation were denied.  The sentencing hearing went forward that day as scheduled, and Mr. Jackson provided a remorseful

21-11977                 JORDAN, J., Dissenting                 4

statement—apologizing to victims, his family, and the district court. But shortly after hearing his sentence, he made a rush toward the prosecutor's table, was pinned down, and taken out of the courtroom after saying "kill me." He returned to the courtroom for the remainder of his sentencing hearing, during which he began to make aggressive statements that contradicted his previous apologies.

A look at Mr. Jackson's presentence investigation report provides a backdrop to the events that transpired that day, confirming that a continuance of the sentencing hearing was needed. According to the report, Mr. Jackson indicated that he had in the past made multiple attempts to overdose by ingesting copious amounts of pills and that, as a child, he was diagnosed with depression, anxiety, and bipolar disorder. *See* D.E. 67 at 25. The report also states that the medical staff at the Emanuel County Jail confirmed that Mr. Jackson was being treated for the noted mental health conditions. *See id.*

A suicide attempt, regardless of its root cause, is a drastic act. It warrants a serious evaluation of the person who tried to end his life. Maybe, as the district court believed, Mr. Jackson understood what he was doing and was able to still participate rationally and understand the proceedings. *See* D.E. 66 at 19–22, 61. But maybe his mind wasn't right. Only a psychiatric evaluation—performed after a continuance—could have provided an answer entitled to a degree of confidence. *See Bailey v. Spears*, 847 F.2d 695, 696 (11th Cir. 1988) (finding that the circumstances, including bizarre

behavior and a suicide attempt in the jail, "raise[d] sufficient doubts regarding [the defendant's] mental capacity as to justify further inquiry by a competent medical expert"). *See also Wojtowicz v. United States*, 550 F.2d 786, 790 (2d Cir. 1977) ("If the suicide attempt is found to have occurred, then it will become necessary for the court to order an examination to determine whether appellant was competent to be sentenced.").