[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 19-13297

_____

PETER HESSER,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket Nos. 2:16-cv-00632-JES-UAM,
2:11-cr-00083-NPM-1

_____

Before LAGOA, BRASHER, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

This is an appeal of the District Court's order granting Peter Hesser partial relief under 28 U.S.C. § 2255 based on Hesser's claims that his trial counsel was ineffective. The District Court vacated three of Hesser's original convictions for tax fraud but left his fourth conviction for tax evasion in place. We granted a Certificate of Appealability as to the effectiveness of Hesser's trial counsel in handling Count Four for tax evasion. Having considered Hesser's arguments on appeal and with the benefit of oral argument, we reverse the District Court's order below and grant Hesser's petition.

## I.

In 2013, Hesser went to trial for three counts of tax fraud under 18 U.S.C. § 287 and 18 U.S.C. § 2 and one count of attempted tax evasion under 26 U.S.C. § 7201.[1] A jury convicted on all four counts, and he was sentenced to a period of incarceration, supervised release, and restitution. He appealed, arguing, among other things, that his convictions should be overturned because the evidence in the Government's case-in-chief was insufficient to sustain a conviction as to all four counts. *Hesser*, 800 F.3d at 1314. Because Hesser's counsel had not properly objected to the sufficiency of the

---

[1] For a full discussion of the facts of Hesser's criminal case, see *United States v. Hesser*, 800 F.3d 1310 (11th Cir. 2015).

Government's evidence below under Fed. R. Crim. P. 29, we reviewed his claims on the insufficiency of the evidence only under a manifest miscarriage of justice standard. *Id.* at 1320. As to the first three counts of tax fraud, we held that, although the Government's evidence would have been insufficient under a *de novo* standard, no manifest miscarriage of justice had resulted as a result of the jury's verdict, so we did not disturb those convictions. *Id.* at 1320–23. As to Count Four, the attempted tax evasion conviction, we held that under the manifest miscarriage of justice standard there was "ample evidence" from which the jury could have reasonably found that Hesser committed tax evasion. *Id.* at 1324. So, we declined to disturb that conviction as well.

After we issued our ruling on direct appeal, Hesser filed a habeas petition under 28 U.S.C. § 2255 in the District Court to set aside his conviction on all four counts. He argued that his trial counsel was ineffective under the Sixth Amendment in three respects. First, he argued that his trial counsel was deficient in failing to properly move for a judgment of acquittal based on the insufficiency of the evidence after the Government finished presenting its case-in-chief. Second, Hesser argued that his trial counsel was ineffective for calling him as a witness at trial. And third, he argued that his attorney failed to properly warn him of the dangers of testifying in his own defense, such that his acceptance of the advice to testify was not knowing, voluntary, and intelligent. The District Court held that Hesser's claim on the sufficiency of the evidence was meritorious as to the three counts of tax fraud

but declined to disturb the jury's verdict as to Count Four for tax evasion.  The District Court then held that Hesser's decision to testify was knowing and intelligent and that there was no evidence that Hesser's attorney had improperly advised him about testifying in his own defense.  As a result, the District Court vacated the convictions for the first three counts of tax fraud but left in place the fourth for tax evasion.  Hesser timely appealed, renewing his arguments that his counsel was ineffective 1) in failing to properly move for judgment of acquittal as to Count Four, 2) in calling him to the witness stand, and 3) in failing to advise him of the dangers of testifying in his own defense.

## II.

In any ineffective assistance of counsel case, we require a habeas petitioner to show that his counsel's performance was deficient because it "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064 (1984).  We also require a habeas petitioner to show that counsel's deficiency caused prejudice by establishing that "there is a reasonable probability" that the outcome of the trial would have been different if trial counsel had not been deficient. *Hinton v. Alabama*, 571 U.S. 263, 275, 134 S. Ct. 1081, 1089 (2014) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).  We will only say that an attorney's performance was objectively unreasonable when "no competent counsel would have taken the action" in question. *See Hall v. Thomas*, 611 F.3d 1259, 1290 (11th Cir. 2010) (internal quotation marks and citation omitted).  And we will only say that

19-13297               Opinion of the Court                    5

there was prejudice when defense counsel's deficiency undermined "confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

As to Count Four for attempted tax evasion, the basic inquiry on the ineffective assistance of counsel claim is, whether Hesser's trial counsel was deficient in failing to move for judgment of acquittal under Fed. R. Crim. P. 29 after the Government's presentation of its case-in-chief, and, if so, whether that deficiency prejudiced the outcome of the trial. Had Hesser's trial counsel moved for judgment of acquittal at the end of the Government's case-in-chief, the District Court would have reviewed the sufficiency of the evidence under the standard of Fed. R. Crim. P. 29. So, we ask whether there is a reasonable probability that the District Court in the criminal case would have held that the Government's evidence was insufficient to sustain a conviction for attempted tax evasion, if it had been reviewing under the Fed. R. Crim. P. 29 standard.[2] Hesser's basic contention is that his conviction was based on evidence that the defense presented, including his own testimony. He says that his attorney's defense constituted

---

[2] We note that the District Court judge in this habeas case was the same judge who presided over the criminal case, and he said that, even under the standard of Fed. R. Crim. P. 29, he would not have granted the motion for judgment of acquittal. Because we hold today that the motion for acquittal should have been granted as a matter of law, we would have reversed the District Court on direct appeal, had Hesser's trial counsel properly moved for judgment of acquittal under Fed. R. Crim. P. 29.

ineffective assistance of counsel because it filled in the gaps of the Government's case where the Government's case would have been insufficient to sustain a conviction on its own. If the jury did indeed rely on Hesser's defense to convict him of Count Four, then, Hesser says, he established both deficient performance (because his attorney proceeded to fill in the gaps of the Government's case instead of moving for acquittal) and prejudice (because there is a reasonable probability that the District Court would have vacated the conviction for insufficiency of the evidence) for his ineffective assistance of counsel claim.

### III.

We first look at the tax evasion statute. The elements of attempted tax evasion under 26 U.S.C. § 7201[3] are as follows: "1) willfulness, 2) the existence of a tax deficiency, and 3) an affirmative act constituting an evasion or attempted evasion of the tax." *Hesser*, 800 F.3d at 1323. At issue in this case is the third element of the statute, the affirmative act requirement. *See United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009) (explaining that "[a]ffirmative acts that satisfy the second element may include keeping double sets of books, concealment of assets, or 'any conduct, the likely

---

[3] "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution." 26 U.S.C. § 7201.

effect of which would be to mislead or to conceal'" (quoting *Spies v. United States*, 317 U.S. 492, 499, 63 S. Ct. 364, 368 (1943))).  In Count Four of Hesser's indictment, the Government put forth three possible affirmative acts that would satisfy the tax evasion statute's affirmative act requirement.  First, the Government said that Hesser had removed his assets from examination of the IRS by converting them to gold and that he had quitclaimed his house to a trust.  Second, the Government alleged in the indictment that Hesser had filed a fraudulent 2007 tax return, which would serve as an alternative affirmative act toward evasion.  Third, the Government said that Hesser had filed additional false income tax returns for 2005 and 2006, which would be a third affirmative act of tax evasion.  The question is whether the Government sufficiently proved any of these affirmative acts with its own evidence—without defense counsel's presentation—such that any evidence the defense could have added would not have prejudiced the outcome of the case because the Government had already carried its burden of proof.

Although we were not a model of clarity in addressing Count Four in our opinion on direct appeal, we held that the Government failed to prove that Hesser's 2007 tax return was actually false under a *de novo* standard. *Hesser*, 800 F.3d at 1323, 1324 (explaining that Hesser argued that "the Government failed to prove that his 2007 tax return was actually false" but holding that "[t]he evidence . . . [wa]s not shockingly tenuous" because Hesser's testimony filled in any gaps in the Government's case).  So, the second

affirmative act listed in the indictment, that Hesser had filed a false 2007 tax return, is not sufficient to meet the affirmative act element of the tax evasion statute under a *de novo* standard of review. *See Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir. 1990) (explaining that "[u]nder the 'law of the case doctrine'" our prior conclusions of law are "generally binding in all subsequent proceedings in the same case . . . later on appeal" (internal citation omitted)). Next, turning to the Government's third alleged affirmative act, the filing of false income tax returns for 2005 and 2006, we likewise said in the direct appeal that the Government had not proven that the 2005 and 2006 tax returns were false. *Hesser*, 800 F.3d at 1320 ("[W]e agree that the Government's evidentiary presentation was deficient."). So, the Government's case-in-chief did not establish the third affirmative act for tax evasion. Having just knocked out the second and third alleged affirmative acts listed in the indictment for attempted tax evasion, we can only hold that Hesser's counsel did not deficiently perform (and therefore did not cause prejudice) if the first set of affirmative acts alleged by the Government in the indictment was sufficiently proven in the Government's case-in-chief.

The first set of alleged affirmative acts in the indictment was that Hesser had removed his assets from examination of the IRS by converting them to gold and that he had quitclaimed his house to a trust. The question is whether either of these acts were proven to be affirmative acts of attempted tax evasion. Turning to the first act, Hesser does not dispute that the Government proved at trial

that Hesser hid gold in his house and that he did not want the IRS to find it.  What Hesser disputes is whether that action alone is legally relevant to attempted tax evasion.

The only way that the action of hiding gold from the IRS would be legally significant to constitute an affirmative act for attempted tax evasion is if the gold had been subject to a tax levied on Hesser.  Otherwise, it would not matter how much he wanted to cheat the IRS.  He would not be cheating on his taxes because the gold would not be subject to a tax levied on him.  In other words, what he was doing in hiding gold would not be an attempt toward evading his taxes.

The Government's evidence primarily consisted of the fact that Hesser attended tax protestor meetings and his wife explained that he hid the gold because he did not want the IRS to find it. Hesser's wife also testified that he gave her $50,000 from some of the gold that he sold.  But, as the Government conceded at oral argument, the Government never provided any evidence to the jury that the gold was Hesser's.  The Government's response to Hesser on this insufficiency of the evidence is something to the effect of, "Don't worry. We've only charged attempt. And clearly Hesser was attempting to evade the IRS."  There is a problem with this argument: attempting to do something non-criminal is not a crime.

The Government confuses a mistake of law with a mistake of fact.  Suppose one defendant is charged with attempted murder because he went into a bedroom and shot a gun at a mass under

the covers, which he believed to be his arch enemy.  It turns out the mass was a pillow and not a person. If the facts had been as the defendant thought they were—if he had been able to do everything he planned to do—he would have likely committed the crime of murder.  He simply mistook the facts because it turns out his enemy was not under the covers, and he could be successfully prosecuted for attempted murder.  Now suppose a second defendant mistakenly believes that it is a federal crime to shoot at trees on one's own property.  He intentionally shoots at a tree in his front yard, and he thinks that he has committed a crime. He is mistaken on the law.  Under this hypothetical, shooting at a tree in one's own yard is not a federal crime.  So, the second defendant cannot be convicted of an attempt crime because he did everything he planned to do, and it still did not amount to a step toward criminal activity.  All this is to say, someone can be convicted for attempt when they mistake the facts but not when they simply mistake the law.  Because the Government did not show that the gold bullion was taxable to Hesser, at most, all the Government proved was that Hesser was possibly mistaken on the law.  And he cannot be convicted for attempted tax evasion on that basis.  We'll explain why.

The Government asked the jury to convict Hesser for hiding gold bullion in his house so that the IRS could not find it.  But the Government never established that the gold was his.  This matters because whether the gold was Hesser's determines whether Hesser's alleged attempt at tax evasion is a mistake of law case.  If

the Government had put forth sufficient evidence to prove beyond a reasonable doubt that the gold was Hesser's, then it might have presented enough evidence for a jury to reasonably find beyond a reasonable doubt that Hesser really did attempt to evade paying his taxes since tax liability had accrued to Hesser before he began hiding gold.  And even if Hesser unsuccessfully evaded the IRS in the end because he was mistaken on the facts—he thought the IRS would not find out about the gold bullion—he still attempted to evade under the statute.

But the Government did not provide enough evidence for a reasonable jury to conclude that the gold was Hesser's beyond a reasonable doubt.[4]  Then, we are left with Hesser hiding random gold bullion.  And, just like the defendant who thought that shooting at trees on one's own property was a crime, based on the Government's presentation of evidence, we are left to think that perhaps Hesser believed that hiding gold was an inherent act of tax evasion or that he needed to hide it because the IRS would come and steal it or that he was simply protecting money belonging to the family trust.  But, just like shooting at trees on one's own property isn't a crime, hiding gold in and of itself is not tax evasion or attempted tax evasion.  Without proving that the gold was actually Hesser's, the Government has left open the very real possibility

---

[4] The most obvious alternative explanation is that the gold belonged to a family trust called the Riverside Trust.  Evidence at trial demonstrated that Hesser often invested for the trust.  And the Government never proved that the gold was Hesser's instead of Riverside Trust's.

12                 Opinion of the Court                 19-13297

that Hesser committed a mistake of law—that he thought he was doing something criminal that was in fact innocuous—or that he did not even think he was doing something criminal in hiding money for the family trust. And that is not proof beyond a reasonable doubt of an affirmative act, which the Constitution requires for Hesser's conviction to stand.

So, the Government did not carry its burden in proving that Hesser's conversion of a certain amount of money to gold bullion constituted an affirmative act toward tax evasion. So, we are left with the other affirmative act that the Government put in the indictment—that Hesser quitclaimed his house to a newly created trust[5]—and the question is whether that constitutes an affirmative act toward tax evasion under 26 U.S.C. § 7201. For sure, the transfer of the house was suspicious. Hesser transferred the house to the trust in the spring of 2006, around the time the IRS filed notice of a tax lien against the Hessers. His wife did not know the details of the trust and did not know anything about the trustee beyond the fact that his name was Michael Harris. Hesser's wife said that she believed that putting the house in the trust was supposed to eliminate the mortgage payments the Hessers owed based on a supposedly illegal clause in the mortgage and that Hesser had gotten the idea to put the house in a trust after attending a seminar on mortgages.

---

[5] This is a different trust from the family trust discussed *supra*.

The problem with the quitclaim of the house serving as the affirmative act for attempted tax evasion is, again, that the Government never proved how Hesser doing so would have any effect on his tax liability.  In its brief, the Government said that it had proven that there was a tax lien on the house at the time that Hesser had put the house into the trust.  Veritably, that would have been evidence of Hesser's intent to evade his tax obligations.  But, as the Government conceded at oral argument, that was an incorrect framing of the facts.  Hesser was aware that tax liability had accrued by early 2006, when Hesser transferred the house to a trust. *Hesser*, 800 F.3d at 1316.  But a lien was not put on Hesser's house until 2007, after he had transferred his house to the trust.  And trying to avoid one's mortgage payments may be problematic on other grounds and lead to foreclosure, as it did in this case, but it is not the crime of tax evasion and cannot serve as the affirmative act for tax evasion by itself.

The Government never even entered a copy of the quitclaim deed as one of its own exhibits to establish the timing of the transfer of the home to the trust in comparison with the accrual of tax liability.  The defense did.  But we cannot rely on the defense's presentation in determining whether the Government's evidence was sufficient to convict Hesser.  In short, the Government's case on the quitclaim of the house as the affirmative act fails for much the same reason that it failed on the gold bullion act. Even if Hesser thought he was committing tax evasion by putting his house in a trust (and it is not even clear he did think this from the

Government's case-in-chief), it would never be tax evasion for Hesser to simply put his house into a trust, without more evidence that the move was aimed at some sort of tax evasion.

Beyond its (now-corrected) assertion that the house lien came before the trust (which is just wrong based on the record) and its also mistaken statement that Hesser could be convicted of tax evasion because he simply thought that he was evading his taxes by putting his house into a trust,[6] the Government has not pointed to one shred of evidence to support its affirmative act theory on the house assignment.

We are mindful of the fact that under the *de novo* standard of Fed. R. Crim. P. 29 for judgment of acquittal, which we are required to apply in the present case, we must review the evidence in the Government's favor and take "all reasonable inferences" in the Government's favor. *United States v. Fleury*, 20 F.4th 1353, 1367 (11th Cir. 2021) (citing *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007)). But we have an equal obligation under Fed. R. Crim. P. 29 to think about whether, having viewed the evidence in the Government's favor, the Government proved its case beyond a reasonable doubt to a "'rational trier of fact.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).

---

[6] The Government also points vaguely in its brief to the fact that Hesser attended tax protestor meetings around the time he deeded his house to the trust. That may be some evidence of interest in learning about ways to challenge federal taxes, but, without more, it does nothing to prove that the deeding of the house to the trust was an act of tax evasion.

In this case, the Government did not do so.  Neither the hiding of the gold bullion nor the deeding of the house into a trust establish the required affirmative act for tax evasion under 26 U.S.C. § 7201. Because the Government did not establish one of the elements of attempted tax evasion, there is no way that a jury could have found Hesser guilty of attempted tax evasion beyond a reasonable doubt, and the District Court would have been required to grant a motion for judgment of acquittal, had it been properly made.

That means Hesser's counsel's performance was deficient because he failed to properly move for judgment of acquittal when the Government had not carried its evidentiary burden in its case-in-chief.  *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  It also means that Hesser suffered prejudice because of that deficient performance.  *See Hinton*, 571 U.S. at 275, 134 S. Ct. at 1089.  Had Hesser's counsel properly moved for judgment of acquittal, the District Court would have been legally required to grant it for the same reasons we do today under a *de novo* standard.[7]  Hesser suffered a violation of his Sixth Amendment right to counsel.  So, we grant his habeas petition and vacate his conviction under Count Four for tax evasion.

---

[7] This is one case where prejudice rises and falls with deficient performance because our ruling that counsel was deficient in failing to move for judgment of acquittal on the facts of this case means that we think there is a reasonable probability that the outcome of this would have been different had defense counsel moved for it.

In doing so, we note the asymmetry between the plight of Hesser's wife and his own. It seems unfair that she now has a felony conviction for filing a false tax return on her record and her husband will have a record free of convictions for tax fraud or evasion based on this case.  This is especially so since Hesser was clearly the mastermind behind all the tax and mortgage maneuvers that Hesser and his wife made.  We do not rejoice in that outcome.  But Hesser's wife chose to plead guilty, and Hesser did not.  And it turns out the Government did not carry its burden in proving Hesser's guilt beyond a reasonable doubt, and Hesser's own defense probably did more to convict him than the Government did. So, we can confidently say that the violation of Hesser's Sixth Amendment warrants the grant of his habeas petition now.

Finally, we do not need to address Hesser's claims on whether his counsel was deficient in calling him to the stand or in failing to warn him about the dangers of testifying at trial.  Our decision on the sufficiency of the evidence vacates Count Four of his conviction, which was the only count left of his original conviction.  So, deciding anything else today would have no effect on the result of this case.  For all these reasons, we reverse.

**PETITION GRANTED.**