[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10924

Non-Argument Calendar

_____

KENNEDY HARRIS, JR.,

                                        Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cv-01040-RBD-GJK

_____

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Federal prisoner Kennedy Harris, Jr. appeals the district court's denial of his habeas petition without an evidentiary hearing. We granted Harris a certificate of appealability on two grounds: first, that Harris's trial counsel provided ineffective assistance of counsel by failing to introduce an expert report concluding Harris was incompetent to stand trial, and second, that Harris's appellate counsel was ineffective for failing to appeal the admission of an incriminating 911 call. Because the record does not conclusively show that Harris is entitled to no relief on this first claim, he is entitled to an evidentiary hearing. Because on this record Harris cannot show he suffered prejudice as a result of appellate counsel's failure to object to the admission of the 911 call on appeal, however, he is not entitled to an evidentiary hearing on the second claim. We vacate in part, affirm in part, and remand for an evidentiary hearing as to Harris's first claim.

## I.    Background

A federal jury convicted Harris of sex trafficking of a minor child, in violation of 18 U.S.C. § 1591(a), b(1), and employing, using, persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct for the purposes of producing child pornography, in violation of 18 U.S.C. § 2251(a). The government alleged that Harris enticed a runaway 16-year-old girl into his care,

took sexually explicit photos of her, and used them to place advertisements for commercial sex on a website called Backpage.com.

Before trial, Harris's attorneys moved to file under seal a motion to suppress statements Harris made to the police on the grounds that he was incompetent to waive his *Miranda* rights.[1] *See Miller v. Dugger*, 838 F.2d 1530, 1537–39 (11th Cir. 1988) (holding that defendant must be competent to waive *Miranda* rights). In preparing their motion to suppress, Harris's attorneys evidently retained an expert who prepared a report on Harris. But Harris's trial attorneys never filed their motion to suppress or presented their expert's analysis to the court. This was because the government and Harris reached an agreement "that the Government will not use Mr. Harris's statement, and [defense counsel] will not call an expert on Mr. Harris's mental, mental infirmities, if you will, at trial." Crim Dkt. No. 49 at 16–17.[2]

At trial, the United States introduced evidence of Harris's active role in a scheme to sex traffic the victim and coerce her into engaging in prostitution. The government introduced a cell phone

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966) (holding that statements obtained by custodial interrogation of a criminal defendant without warning of constitutional rights are inadmissible under the Fifth Amendment).

[2] References to "Crim. Dkt." in this opinion refer to the docket entries in the district court in Harris's underlying criminal case. *United States v. Harris*, no. 6:16-cr-00083 (M.D. Fla.). References to "Civ. Dkt." refer to docket entries in Harris's habeas action in federal district court. *Harris v. United States*, no. 6:19-cv-01040 (M.D. Fla.).

seized from Harris, as well as reports of the phone's contents. Harris's phone contained web history showing repeated visits to Backpage, emails regarding a Backpage listing, suggestive photographs of the victim, and text messages soliciting sex. Harris's phone also contained a contact entry for "My $$$," which corresponded to a phone Harris gave to the victim.

Other evidence confirmed the existence of Harris's scheme. A confidential police informant testified that Harris left the victim in the informant's room, where the informant later heard Harris call the victim and tell her to "get up, get dressed, and get ready because she had a date to go to." Crim. Dkt. No. 102 at 181. The informant testified that the victim began to cry and that when she objected to going, Harris told her "[y]ou're going. That's it." Crim. Dkt. No. 102 at 182. The informant also testified that Harris later returned and collected the victim from the informant's room. The victim testified that, after that interaction, Harris took her to a hotel room, where she had sex with a Backpage user—whom she later identified in a lineup—in exchange for money. She gave the money to Harris. She also testified that Harris took explicit photos of her that later appeared on Backpage. Additional testimony showed that the government recovered property belonging to the victim from the same hotel where Harris brought her.

Other witnesses testified that Harris was in control of the scheme. One specifically testified that Harris controlled the victim by providing her with crack cocaine and another corroborated that Harris gave the victim cocaine every day.

At trial, the government also sought to introduce an audio recording of a 911 call. On the call, Chasitie Odom—an apparent companion of Harris's—told a local police department that she had just left an apartment Harris was using. She reported that Harris had a weapon and was holding the victim at the apartment. She told the dispatcher that Harris was giving the victim drugs and planned to put the victim on Backpage.com.

Harris's counsel objected to the admission of the recording arguing, among other things, that the recording contained hearsay. The government responded that the call was a non-testimonial present sense impression and thus admissible under the hearsay rules. *See* Fed. R. Evid. 803(1). The government added that the call was relevant to explain the response of police officers who went to the apartment where Harris and the victim were located. After reviewing the audio of the 911 call, the trial court agreed with the government, and the jury heard the recorded call.

The government also introduced evidence about what happened after the phone call. In response to the call, police arrived at the apartment, spoke with Harris and a companion, and located the victim under a bathroom sink. A police officer and the victim each independently described the nature of the 911 call, and the jury watched body-camera footage of the police response. The victim also described the incident that prompted the call, testifying that Harris had a concealed gun and yelled at her not to leave the apartment.

The jury found Harris guilty of all counts. Following the trial, the district court appointed new counsel to represent Harris at sentencing, due to ongoing disagreements between Harris and trial counsel. Harris's new counsel sought several continuances of the sentencing hearing so that he had time to familiarize himself with the record and to evaluate mitigation evidence. During this period, sentencing counsel considered but did not pursue a competency evaluation of Harris, explaining at one point that he was no longer "of the opinion that competency is an issue based on his interaction with the Defendant." *United States v. Harris*, 741 F.App'x. 663, 665 (11th Cir. 2018) (unpublished) (direct appeal).

On the day of Harris's sentencing, Harris's counsel changed tack and sought a further continuance to complete a competency evaluation. Counsel told the trial court that "he was not comfortable going forward" with sentencing because:

> I'm not sure that [Harris] understands—I've had plenty of clients that don't agree with my advice. But this just feels different. And it's not that he does not just solely disagree. I don't and I'm not convinced that he understands what I'm telling him, Judge. I've provided objective documentation to show that he has a very, very low ability to understand. He has a very low functioning level. . . . And I don't think it's the right thing for him to not at least be evaluated.

*Harris*, 741 F.App'x at 665.

Along with a sentencing memorandum, Harris's counsel provided the court with a 2011 Social Security-related evaluation determining that Harris had an IQ of 55 and had been diagnosed with ADHD and "Moderate Mental Retardation." Crim. Dkt. Nos. 114-1, 114-2. At the hearing, counsel explained to the court that during the prior weekend Harris met with a psychologist. According to Harris's counsel, the psychologist concluded that Harris had significant verbal deficits and could not "completely understand the ideas, thoughts, directions he is told by others." Crim. Dkt. No. 132 at 24–26. The psychologist reached no conclusion as to Harris's competency. Harris's counsel also told the district court that Harris could not read complex words and could not write apart from his own name and simple words. And Harris's counsel alerted the district court to the existence of a competency evaluation performed before trial, explaining that Harris had been evaluated roughly a year earlier. Counsel did not produce the evaluation or describe its conclusions. The evaluation is not in the record. Counsel did advise the district court that trial counsel had reached an agreement with the government not to call the doctor who performed that evaluation at trial if the government agreed not to introduce Harris's statements to the doctor.

The government opposed Harris's request for a continuance. It argued that a continuance was unwarranted in light of prior continuances and that the record contradicted Harris's claim of incompetency. To support its position, the government introduced

recordings of telephone calls Harris made while in jail, which purportedly demonstrated his understanding of the proceedings.

The district court denied his motion for a continuance. It reasoned that Harris had ample time to receive a competency evaluation and that the record contradicted his claim of incompetency. The district court stated that it reviewed the docket and materials submitted by Harris and relied on its observations of Harris at trial and sentencing—including the phone calls submitted by the government—to support its ruling.

Harris appealed to this Court, arguing in relevant part that the district court erred by not ordering a competency hearing under 18 U.S.C. § 4241. We affirmed because the district court did not "abuse[] its discretion in finding no bona fide doubt as to Harris's competency." *Harris*, 741 F.App'x. at 667. We noted that Harris had offered no evidence of irrational behavior and his demeanor did not show he was incompetent. In addition, we noted that although Harris submitted prior medical evaluations concluding that he possessed limited intelligence, those reports did not show he was incompetent to proceed. *Id.* at 667–68.

Following our affirmance, Harris filed a *pro se* motion to vacate or modify his sentence pursuant to 28 U.S.C. § 2255, raising 11 grounds for relief. As relevant here, Harris argued that his trial counsel was ineffective for failing to move for a competency evaluation or hearing and failing to introduce a doctor's report concluding that Harris "was not smart enough to do what the government charged him with." Civ. Dkt. No. 1 at 13; *see also id.* at iii–iv.

According to Harris, a mental health specialist evaluated him for roughly three hours in jail and concluded "that he was incompetent to stand trial." Civ. Dkt. No. 13 at 10. Harris also argued that that his appellate counsel was ineffective for failing to appeal the district court's admission of the recorded 911 call. Harris requested an evidentiary hearing.

Without holding an evidentiary hearing, the district court rejected each of Harris's claims and dismissed his motion with prejudice. The district court concluded that, in light of our holding that the district court did not abuse its discretion in refusing to order a competency hearing on the eve of sentencing, Harris "failed to show that his counsel was deficient" and made "no showing of prejudice" on his claim that trial counsel should have sought a competency hearing and evaluation. Civ. Dkt. No. 15 at 16. It also concluded that "[t]here was no error in admitting the testimony on the 911 call" and thus no ineffective assistance by appellate counsel in failing to appeal that ruling. Civ. Dkt. No. 15 at 17–19.

We granted a certificate of appealability as to these two claims. We also appointed counsel to represent Harris.

## II.    Standard of Review

"We review the district court's denial of an evidentiary hearing in a § 2255 proceeding for abuse of discretion." *Winthrop-Redon v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014). Under § 2255, a district court must hold an evidentiary hearing "[u]nless the motion and files and records of the case conclusively show that

the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). When a § 2255 movant alleges facts that, if true, would entitle him to relief, an evidentiary hearing is required, provided that "the district court is not required to grant an evidentiary hearing when the defendant's claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon generalizations that are unsupported by the record evidence." *Rosin v. United States*, 786 F.3d 873, 877–78 (11th Cir. 2015).

On appeal from a § 2255 proceeding, we review a district court's legal conclusions *de novo* and its factual findings for clear error. *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004). "An ineffective assistance of counsel claim is a mixed question of law and fact subject to de novo review." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (internal quotation omitted).

"We may affirm on any ground supported by the record." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (internal quotation marks omitted).

We construe *pro se* pleadings "liberally." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). We are mindful that a "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

### III.    Discussion

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255(a). Once a prisoner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Id.* § 2255(b). Harris argues that the district court erred by denying his ineffective assistance claims without holding an evidentiary hearing. To be entitled to an evidentiary hearing, a movant must allege facts in his § 2555 motion that, if true, would be sufficient to entitle him to relief on his claims. We have explained that no evidentiary hearing is warranted, however, if these facts are affirmatively contradicted by the record. *Castillo*, 816 F.3d at 1303.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. amend. VI; *see Strickland v. Washington*, 466 U.S. 668, 684–86 (1984). To prevail on an ineffective assistance of counsel claim, a movant "must show (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense." *Riolo v. United States*, 38 F.4th 956, 967 (11th Cir. 2022) (internal quotation marks omitted). Counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Hesser v. United States*, 40 F.4th 1221, 1224 (11th Cir. 2022) (quoting *Strickland*, 466 U.S. at 687–88). This standard is deferential to counsel's judgments: performance falls below an objective standard of reasonableness only if "no

competent counsel would have taken the action in question." *Id.* (internal quotation marks omitted). Counsel's deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (internal quotation marks omitted). We now apply this framework to Harris's two ineffective assistance claims to determine whether the district court erred when it denied these claims without an evidentiary hearing.

## A.    Harris Was Entitled to an Evidentiary Hearing on His Claim that Trial Counsel Was Ineffective in Failing to Request a Competency Examination.

Harris claims that his trial counsel was ineffective for failing to request a pretrial competency evaluation and hearing. Because Harris alleges facts that, if true, would be sufficient to establish that his trial counsel was deficient and the deficiency prejudiced Harris, we conclude he was entitled to an evidentiary hearing.

We begin by explaining why Harris's allegations were sufficient to show that his trial counsel rendered deficient performance. Harris alleged that trial counsel obtained an expert evaluation from a "mental health specialist (Doctor)." Civ. Dkt. No. 1 at 18. According to Harris, the expert concluded that Harris "was not smart enough to do what the Government" accused him of, *id.*, and "was incompetent to stand trial." Civ. Dkt. No. 13 at 10. Because Harris filed his motion *pro se*, we construe it "liberally," holding it "to less

stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted). Accordingly, we treat the motion as alleging that Harris was evaluated by a mental health expert who concluded that he was incompetent to stand trial.[3]

If true, Harris's allegations—that trial counsel learned from an expert that Harris was incompetent and failed to act on the expert's conclusions—would show that his trial counsel rendered

---

[3] Although Harris's motion states that the expert concluded he "was not smart enough to do what the Government" accused him of, Civ. Dkt. No. 1 at 18, his reply in support of his motion clarifies that the expert concluded he "was incompetent to stand trial." Civ. Dkt. No. 13 at 10. Under the liberal pleading standards afforded to *pro se* litigants, we construe Harris' motion in light of this clarification. Other circuits have held that where *pro se* litigants allege new facts in their briefing that are consistent with a prior pleading, courts must consider those facts as if they were alleged in the pleading itself. *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 529 (D.C. Cir. 2015); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). Our predecessor court took a similar approach when the *pro se* litigant retained the ability to amend the relevant pleading, by construing the later filing as a motion to amend and granting it. *McGruder v. Phelps*, 608 F.2d 1023, 1025 (5th Cir. 1979); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting all decisions of the Fifth Circuit handed down before the close of business on September 30, 1981 as binding precedent in the Eleventh Circuit). Here, Harris could have amended his § 2255 motion to assert that the expert found him incompetent to stand trial because the amendment would relate back to his original § 2255 motion. *See* Fed. R. Civ. P. 15(c)(1)(B). As we have explained in the habeas context, relation back is appropriate to—among other things——"expand the facts, and . . . further specify [the movant's] original claims." *Dean v. United States*, 273 F.3d 1218, 1222 (11th Cir. 2002).

deficient performance that prejudiced him. *See, e.g., Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989); *see also Jermyn v. Horn*, 266 F.3d 257, 300 (3d Cir. 2001) ("Clearly, an attorney would render ineffective assistance of counsel if he or she . . . failed to request a competency hearing, despite indicia of incompetence.").

The record does not affirmatively contradict Harris's allegations that an expert determined he was incompetent to stand trial. The record shows that trial counsel did indeed have an expert evaluation of Harris performed before trial. Counsel obtained a report that they planned to use to support a motion challenging the admission of a statement Harris made to the police on the ground that Harris was not competent to knowingly waive his *Miranda* rights. Trial counsel agreed not to seek to introduce the report or expert testimony at trial, and in exchange the government agreed not to introduce Mr. Harris's statement to the police. Because of the agreement, the report never became a part of the record, so the record does not contradict Harris's allegations about what the report concluded. But there is evidence in the record to support the possibility that an expert could have concluded Harris was not competent to stand trial: a 2011 Social Security-related evaluation determined that Harris had an IQ of 55 and diagnoses of ADHD and "Moderate Mental Retardation," Crim. Dkt. Nos. 114-1, 114-2, and around the time of sentencing a psychiatrist visited Harris and preliminarily observed that he had significant verbal deficits and

could not "completely understand the ideas, thoughts, directions he is told by others," Crim. Dkt. No. 132 at 24–26.[4]

Because the record does not contain the expert's evaluation, we also lack a clear basis to evaluate the soundness of counsel's decision to barter away the competency issue in exchange for the non-admission of Harris's statement. To be sure, counsel's trial strategy is entitled to significant deference. *See Hesser*, 40 F.4th at 1224. And Harris may well fail to show on remand—where his evidentiary burden becomes substantial—that this decision was unreasonable. But given Harris's allegations before us, we conclude that he was entitled to an evidentiary hearing.

The district court determined that Harris's claim failed based on our decision on direct appeal that the district court did not abuse its discretion in denying a competency hearing on the eve of sentencing. But our decision did not address whether Harris would have been entitled to a competency hearing if, before trial, trial counsel had submitted an expert evaluation finding that Harris was incompetent. Instead, our decision on direct appeal relied largely on the district court's observation of Harris and a recorded phone call in which Harris showed an awareness of the fact that

_____

[4] For context, in *Atkins*, the Supreme Court explained that the term "'[m]ild mental retardation' is typically used to describe people with an IQ level of 50–55 to approximately 70." *Atkins v. Virginia*, 536 U.S. 304, 308 n.9 (2002); *see also id.* at 309 (explaining that expert's conclusion that petitioner was "mildly mentally retarded" was based in part on the "administration of a standard intelligence test which indicated that Atkins had a full-scale IQ of 59.")

the United States sought to sentence him to life imprisonment. *Harris*, 741 F.App'x at 667–68. We relied on the fact that "while Harris's attorney submitted some previous medical evaluations speaking to Harris's low intelligence, none of those records suggested that Harris was incompetent to proceed." *Id.* at 668. In contrast, in his § 2255 motion, Harris alleged that trial counsel failed to act on an evaluation that concluded Harris was incompetent to proceed. Our decision in Harris's direct appeal thus does not impact our conclusion here, that Harris's allegations, if true, were sufficient to establish that his trial counsel rendered deficient performance.

We now turn to prejudice. The record also does not foreclose the possibility that Harris can show he suffered prejudice as a result of counsel's deficient performance—that is, a reasonable probability that the district court would have ordered a competency evaluation and found Harris incompetent but for trial counsel's actions. *See Strickland*, 466 U.S. at 694 (prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). At sentencing, even without any expert evaluation finding Harris incompetent, the district court came close to ordering a competency evaluation. In ultimately refusing a hearing, the district court relied in part on its impression that Harris was behaving in a dilatory manner. At a minimum, these circumstances suggest that a pre-trial request for a hearing supported by an expert opinion could have resulted in a competency hearing. *See e.g., United Sates v. Cometa*,

966 F.3d 1285, 1287 (11th Cir. 2020) (competency evaluation held by trial court in response to expert report); *United States v. Wingo,* 789 F.3d 1226, 1236 (11th Cir. 2015) (considering "prior medical opinion regarding the defendant's competence to stand trial" among factors to be applied in determining whether competency hearing and evaluation were required). And where Harris has adequately alleged that an uncontradicted expert evaluation found him incompetent at the time of trial the record does not conclusively show otherwise.

Because "the motion and files and records of the case do not conclusively show that [Harris] is entitled to no relief," he was entitled to an evidentiary hearing. 28 U.S.C. § 2255(b). We thus vacate and we remand for an evidentiary hearing on this claim.

## B.    Harris Was Not Entitled to an Evidentiary Hearing on His Claim that Appellate Counsel Was Ineffective in Failing to Challenge the Admission of the 911 Call.

Harris also argues that the district court erred when it failed to hold an evidentiary hearing on his claim that his appellate counsel was ineffective in failing to challenge on appeal the admission of the recording of the 911 call. Before the trial court, Harris challenged the admission of the 911 call as hearsay.[5] The district court

---

[5] Harris also objected to the admission of the 911 call as irrelevant and contrary to the Confrontation Clause of the Sixth Amendment. In this appeal, Harris does not argue any Confrontation Clause or relevancy-based ineffective

18                    Opinion of the Court                21-10924

overruled Harris's objections and admitted the recording of the call on the ground that it constituted a present sense impression and therefore was non-hearsay. *See* Fed. R. Evid. 802 (hearsay generally prohibited); Fed. R. Evid. 803(1) (present sense impression excepted). Harris claims that his appellate counsel's performance was deficient because counsel failed to argue on appeal that the trial court erred in admitting the recording.[6] The district court rejected Harris's claim without an evidentiary hearing because it found his allegations insufficient to show prejudice. The district court reasoned that Harris could not show prejudice because the trial court correctly ruled that the recording of the call was admissible. *See Brown v. United* States, 720 F.3d 1316, 1335 (11th Cir. 2013) (there can be no showing of actual prejudice from an appellate attorney's failure to raise a meritless claim.")

On appeal, Harris says that the district court failed to adequately review this claim. He argues that the district court could not have determined that the trial court's ruling admitting the

_____

assistance claim, and thus we conclude he has abandoned these grounds. *See United States v. Campbell*, 26 F.4th 860, (11th Cir. 2022) (en banc) ("Typically, issues not raised in the initial brief on appeal are deemed abandoned.").

[6] Our analysis of this claim is unaffected by the fact that Harris alleges ineffective assistance of *appellate* counsel. "Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland.*" *Brooks v. Comm'r, Ala. Dep't of Corrs.*, 719 F.3d 1292, 1300 (11th Cir. 2013) (internal quotation marks omitted).

recording was correct because the district court failed to review a transcript or audio of the 911 call. The government disagrees with Harris. It says that the district court's review was adequate because the same district court judge listened to the audio recording at least twice three years earlier, when presiding over Harris's trial—once in ruling upon the 911 call's admissibility and again when it was published to the jury.

We need not resolve the parties' dispute. Even if we assume for purposes of this appeal that the district court was required to listen to the call anew and failed to do so, we still may affirm on the alternative ground that the allegations in Harris's § 2255 motion were insufficient to establish prejudice. Even if the phone call in fact included inadmissible hearsay and should have been excluded, Harris nevertheless cannot show that he was prejudiced by his counsel's failure to raise this evidentiary issue on appeal. And where, as here, a movant cannot meet one of *Strickland*'s prongs, we need not address the other. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

Harris cannot show prejudice because there was ample evidence before the jury to support Harris's conviction. At trial, the jury heard testimony from the victim, a confidential informant, police officers, and companions of Harris, all establishing that Harris directed an internet-based scheme in which an underaged victim had sex for money and gave the money to Harris. The government introduced testimony and exhibits showing that Harris communicated with customers from his phone and arranged for them to

have sex with the underaged victim. The testimony and exhibits also showed that Harris had been involved in taking sexually suggestive photographs of the underaged victim to post on the internet. And, crucially, the record shows that aspects of the 911 call were replicated by evidence to which Harris did not object. For example, police officers who responded to the 911 call described the call in order to contextualize their response. The victim described the facts underlying the call. And the jury saw body-camera video of the police officers' response to the call. Harris's counsel did not object to this evidence. So even taking away the audio recording of the 911 call, much of what it contributed at trial remains.

In light of this evidence, Harris cannot show that "there is a reasonable probability that, but for [appellate counsel's failure to challenge the admission of the 911 call], the result of the proceeding would have been different," *i.e.*, prejudice. *Knowles*, 556 U.S. at 127; *see also Bester v. Warden*, 836 F.3d 1331, 1339 (11th Cir. 2016) (concluding that "overwhelming" evidence of guilt precluded finding prejudice); *Clark v. Comm'r, Ala. Dep't. of Corrs.*, 988 F.3d 1326, 1332–33. (11th Cir. 2021) (same).

Because Harris cannot show prejudice from appellate counsel's allegedly deficient failure to appeal the district court's admission of the 911 call, the record shows "conclusively" that Harris is not entitled to relief on this claim. 28 U.S.C. § 2255(b). The district court did not abuse its discretion in denying an evidentiary hearing on this claim.

## IV.    Conclusion

For the reasons set forth above, we vacate in part and affirm in part. We remand to the district court for an evidentiary hearing on Harris's claim that his trial counsel was ineffective for failing to move for a pretrial competency evaluation and hearing.

**AFFIRMED IN PART, VACATED and REMANDED IN PART.**